Hand-Delivered

FILED
STATESVILLE, NC

JUN - 5 2018

U.S. District Court
Western District of N.C.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

Case No. _5:18cv92_

|  |  |
|---|---|
| MARSHALL LEE BROWN, JR., | ) |
| Petitioner, | ) |
|  | ) |
| v. | ) |
|  | ) |
| ERIC HOOKS, SECRETARY OF THE | ) |
| DEPARTMENT OF PUBLIC SAFETY AND | ) |
| KEN BEAVER, SUPERINTENDENT OF | ) |
| ALEXANDER CORRECTIONAL | ) |
| INSTITUTION, ET AL., | ) |
| Respondents. | ) |
|  | ) |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

## COVER PAGE

# TABLE OF CASES AND AUTHORITIES

## UNITED STATES and FOURTH CIRCUIT CASES

Beazell v. Ohio, 269 U.S. 167 (1925). . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . .21

Boag v. MacDougall, 454 U.S. 364, 70 L. Ed. 2d. 551, 102 S. Ct. 700 (1982). . . . . . . . . .. . . . .1

Board of Pardons v. Allen, 482 U.S. 369, 374-380 at 378 (1987). . . . . . . . . . . . . . . . . .8, 10

Brady v. United States, 397 U.S. 742 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Bryant v. Carleson, 444 F. 2d 353, 357 (9th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Buie v. City of Columbia, 378 U.S. 347, 353-54 (1964). . . . .passim 5, 7, 8, 13, 15, 16-18, 20- 22

Calder v. Bull, 3 Dall. 386, 390 (1798). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cochran v. Morris, 73 F. 3d 1310, 1318 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . .6

Collins v. Youngblood, 497 U.S. 37 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Colonial Penn Ins. Co. v. Coil, 887 F. 2d 1236, 1239 (4thCir. 1989). . . . . . . . . 5, 6, 13, 16, 19-20

Cummings v. Missouri, 71 (4 Wall.) 277, 325-326 (1867). . . . . . . . . . . . . . . . . . . . . . . . 18

Dobbert v. Florida, 432 U.S. 282, 298 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Duncan v. Missouri, 152 U.S. 377, 382 (1894). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fletcher v. Peck, 6 Cranch 87, 138 (1810). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 21-23

Gibson v. Mississippi, 162 U.S. 565, 589-590 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Greenholtz v. Inmates of Nebraska Penal Complex, 422 U.S. 1 (1979). . . . . . . . . . . . . . . . . . 14

Hawker v. New York, 170 U.S. 189, 201 (1898). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Hewitt v. Helms, 459 U.S. 460, 470-471 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Hopt v. Territory of Utah, 110 U.S. 574, 589 (1884). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 100 (1938). . . . . . . . . . . . . . . . . . . . . . .20, 23

In re Medley, 134 U.S. 160, 171 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

i

Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454 (1989) . . . . . . . . . . . . . . . . . . . . . . . . .8, 14

Kring v. State of Missouri, 107 U.S. 221, 229 (1883). . . . . . . . . . . . . . . . . . . . . . . . . . .5, 13, 18

Lindsey v. Washington, 301 U.S. 397, 401 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lynce v. Mathis, 519 U.S. 433, 441 n. 13 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 19

Mallett v. North Carolina, 181 U.S. 589, 593-594 (1901). . . . . . . . . . . . . . . . . . . . . . . . . . .18

Malloy v. South Carolina, 237 U.S. 180, 184 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Miller v. Florida, 482 U.S. 423 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ogden v. Blackledge, 6 U.S. (2 Cranch) 272, 277 (1804). . . . . . . . . . . . . . . . . . . . . . . . .18, 19

Puckett v. U.S., 556 U.S. 129, 137 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Sandin v. Connor, 515 U.S. 472, 477-78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Strickland v. Washington, 466 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Thompson v. Missouri, 171 U.S. 380, 382, 387 (1898). . . . . . . . . . . . . . . . . . . . . . . . . . .18

United States v. Wiltberger, 18 U.S. (5 Wheat) 76 (1820). . . . . . . . . . . . . . . . . . . . . . . . .9, 10

U.S. v. Wilson, ex rel. Robinson Rancheria Citizens Council v. Borneo, 971 F. 2d 244, 248 (9th

Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Waddell v. Dept. of Corr., 680 F.3d 384, 395 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . .12

Weaver v. Graham, 450 U.S. 24, 30-31 (1981). . . . . . . . . . . . . . . . . . . . . . . . . .8, 10, 13, 21

Wilkinson v. Austin, 545 U.S. 209, 221 (2005). . . . . . . . . . . . . . . . . . . . . . . . . .11, 13, 14, 16

Williams v. Taylor, 529 U.S. 362 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 17

Wolff v. McDonnell, 418 U.S. 539, 557 (1974). . . . . . . . . . . . .passim 7, 8, 10-14, 13, 17, 20, 21

Wood v. Lovett, 313 U.S. 362 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

## U.S. CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I, Sec. 9, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Case 5:18-cv-00092-MR   Document 1-1   Filed 06/05/18   Page 3 of 31

U.S. Const. Art. I, sec. 10, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

U.S. Const. Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

U.S. Const. Amend. VIII & IX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

U.S. Const. Amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 17, 24

## NORTH CAROLINA CONSTITUTIONAL PROVISIONS

N.C. Const. Art. I, sec. 16 .ex post. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## NORTH CAROLINA STATUTORY PROVISIONS

N.C. Gen. Stat. §12-22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22 fn9

N.C. Gen. Stat. §14-2 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . passim 2, 4, 5, 7-10, 13-15, 17

N.C. Gen. Stat. §148 (1974-75). . . . . . . . . . . . . . . . . . . . . . . . . . passim 3, 5-8, 11, 14, 15, 22

N.C. Gen. Stat. §150B-1, et seq. (1976 through 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

5 N.C. Admin. Code 2B §§.0100-.0103 (1976-1983). . . . . . . . . . . . . . passim 3, 5-18, 20, 22, 23

## STATE CASES – N.C.

State v. Bowden, 193 N.C. App. 597 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Jones v. Keller, 249 N.C. 364; 499 S.E.2d 761 (2010) . . . . . . . . . . . passim 1, 3-7, 10-21, 23, 24

State v. Richardson, 295 N.C. 309 (1978); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

State v. Williams, 295 N.C. 655 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

Dep't of Corr. Div. of Prisons, Policy and Procedure, ch. B., section .0110(6) (1995) (defining
"Sentence Reduction Credits). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Hall, General Principles of Criminal Law 2d Ed. (1960) at 58-59. . . . . . . . . . . . . . . . . . . . . . . . . 22

Locke, Mandy, *Purdue Will Block Inmates' Release*, News & Observer, Oct. 23, 2009, available at 2009 WLNR 21055443. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

Locke, Mandy, *State Forced To Free 20 Violent Criminals*, News & Observer, Oct. 16, 2009, available at 2009 WLNR20447698. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

Statement from the Governor Regarding Prisoner Release, *Governor Says Offenders Will Not Be Turned Loose*, Oct. 22, 2009, available at www.governor.state.nc.us/NewsItems/PressRelease Detail.aspx?newsItemid=727. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA STATESVILLE DIVISION

Case No._____

MARSHALL LEE BROWN, JR.,  )
                          Petitioner,  )
                          )
v.                        )
                          )
ERIC HOOKS, SECRETARY OF THE  )
DEPARTMENT OF PUBLIC SAFETY AND )
KEN BEAVER, SUPERINTENDENT OF  )
ALEXANDER CORRECTIONAL  )
INSTITUTION, ET AL.,  )
                          Respondents.  )
                          )

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

NOW COMES MARSHALL LEE BROWN, JR., Petitioner, appearing Pro se, who respectfully petitions this Honorable Court, while declaring the protections of *Boag v. MacDougal*, 454 U.S. 364, 70 L. Ed. 2d. 551, 102 S. Ct. 700 (1982) et al., to issue its writ of habeas corpus pursuant to 28 U.S.C.§ 2254 based on the following:

## STATEMENT OF THE CASE

## I.   PROCEDURAL HISTORY

As of July 16, 2017, petitioner had earned sufficient mandatory sentence-reduction credits, hereinafter, "Credits," awarded by state law and regulations to warrant his release from

his 80 year determinate 'life' sentence. However, the Department of Corrections, hereinafter, "the DOC," ignored the relevant law and refused to apply petitioner's credits to reduce his sentence, stating they never did so before.[1]

On July 25, 2017, petitioner filed an application for a writ of habeas corpus hereinafter ("Petition"), in District 22A, Alexander County Superior Court, Taylorsville, North Carolina, demanding his release. The State filed a response in opposition on August 16, 2017 and on even date, without a hearing, petitioner's petition was denied. On September 22, 2017, petitioner filed a response to the State's opposition that included a motion for summary judgment and was summarily denied on December 7, 2017. On January 22, 2018, petitioner filed a petition for writ of certiorari with the Court of Appeals of North Carolina which was summarily denied on January 25, 2018. Seeking review of that denial, petitioner filed a petition for writ of certiorari with the North Carolina Supreme Court on March 13, 2018 which was summarily denied on March 19, 2018.

Consequently, petitioner remains incarcerated—with a release date in 2056—despite having completed his sentence. Petitioner now seeks federal habeas corpus review from this Court.

## I.    FACTUAL AND LEGAL BACKGROUND

Petitioner was arrested on or around July 13, 1977 and, pursuant to a plea-bargain with the State, was convicted of second-degree murder and sentenced to "life" imprisonment, when North Carolina law provided that "[a] sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years." See N.C. Gen. Stat. §14-2 (1974), hereinafter "§14-2." Prior to petitioner's offense, the North Carolina General Assembly had enacted the

---

[1] This issue will be discussed in the due process analysis, infra.

North Carolina Administrative Procedure Act (1976 through 1995), which included N.C. Gen. Stat. §150B-1 and, more specifically, 5 N.C. Admin. Code 2B (1976), hereinafter "NCAC." Its purpose was to establish a method of computing good-time for acceptable behavior and gain-time for behavior not normally required of a Division of Prison inmate and to provide the DOC with a 'sure-fire' method of determining either an inmate's unconditional discharge date or parole eligibility date as allowed by N.C. Gen. Stat. §148-13 (1975).[2]

It was NCAC that began the automatic awarding of mandatory good-time credits for all-purposes to every inmate, including those with 'life' terms, which were to be applied against the total length of an inmate's sentence. See id. NCAC, infra, for illustration.

On or around July 16, 2017, petitioner had accrued the requisite number of credits to warrant his unconditional release but was denied and remains unlawfully incarcerated.

## II.   PETITIONER'S CLAIMS FOR RELIEF

In his petition for habeas corpus, petitioner sets forth four substantive legal claims, alleging that the DOC violated:

(1) his right to due process under the Fourteenth Amendment to the U.S. Constitution;

(2) his right to be free from ex post facto laws under Art. I, sec. 9. cl. 3 of the U.S. Constitution;

(3) his right to be free from laws impairing the obligation of contract under the Art. I, sec. 10, cl. 1; and

(4) his right to equal protection under the Fourteenth Amendment to the U.S. Constitution.

## ARGUMENT

---

[2] See the last clause of N.C. Gen. Stat. §148-13 (1975).

# I. PETITIONER'S RIGHT TO DUE PROCESS AND EQUAL PROTECTION WAS VIOLATED WHEN THE STATE ARBITRARILY WITHDREW HIS STATE-CREATED SUBSTANTIVE RIGHT TO HAVE HIS SENTENCE-REDUCTION CREDITS APPLIED TOWARDS HIS UNCONDITIONAL RELEASE.

" [N]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. 5th and 14th Amendments.

## A. Violation of Due Process Analysis.

### 1. Meaning and Duration of a §14-2 Sentence

On July 25, 2017, petitioner sought to be released from prison having fully served his sentence. Petitioner then discovered that his credits had been retroactively withdrawn pursuant to the State Court's ruling in *Jones v. Keller,* 364 N.C. 249 (2010). The issue in *Jones* allegedly arose from a DOC 'mistake of law' that a "life" sentence during the era of §14-2 was a sentence for one's 'natural life' rather than for the 80 years it actually was. The sincerity of the DOC's claim is questionable given the decisions in *State v. Richardson* and *State v. Williams,* both rendered some 32 years before *Jones,* that §14-2 sentences were determinate terms of 80 years. See *State v. Richardson,* 295 N.C. 309 (1978); *State v. Williams,* 295 N.C. 655 (1978). In neither case did the State, under which DOC's interests are represented, argue that the proper interpretation of §14-2 is 'natural life.' Even if the DOC was truly mistaken, petitioner is baffled as to how they were still allowed to retroactively alter the credits. For over 40 years petitioner has heard jailhouse lawyers utter, "the dreaded chant of doom," i.e. "'ignorantia juris non excusat' or "[i]gnorance of the law is no excuse," when their court-pleadings were denied based on its premise. Yet, somehow in *Jones,* despite having openly admitted said ignorance, the DOC was still allowed to prevail. In any event, petitioner is uncertain as to how the DOC's alleged mistake in *Jones* applies to petitioner's case. From his trial lawyer to the DOC's intake unit programmer, petitioner was always told that his sentence was an 80 year determinate sentence

4

that would be automatically reduced by the mandatory award of good time credits as well as the earning of any additional reduction credits through work or school program participation. In fact, it was the existence of the right to automatic sentence mitigation that ultimately swayed petitioner to enter his plea bargain. Eventually, the DOC admitted—and the *Jones* Court found—that the §14-2 sentence had always been a determinate term of 80 years and here petitioner ask this Court to take judicial notice of that admission. See *Jones* at 364 N.C. 252; also see e.g. *Colonial Penn Ins. Co. v. Coil*, 887 F. 2d 1236, 1239 (4th Cir. 1989); *Bryant v. Carleson*, 444 F. 2d 353, 357 (9th Cir. 1971); and *U.S. v. Wilson, ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F. 2d 244, 248 (9th Cir. 1992) all cases allowing courts to take judicial notice of court records, etc. (citing Fed. R. Evid. 201(d), hereinafter, "*Colonial Penn.*"

However, as it now stands, the *Jones* Court's perversion of the law, as applied to petitioner, creates a de facto ineffective assistance of counsel claim because it extends petitioner's punishment beyond what he was told. See e.g. *Strickland v. Washington*, 466 U.S. 668 (1984).

From the beginning, petitioner's case was distinguished from *Jones's* because the laws governing the administration of petitioner's sentence versus those in *Jones's* were different and the United States Supreme Court, hereinafter "the Supreme Court," has held "[i]t is the law in existence at the time of a party's offense that governs his punishment.." See e.g. *Buie v. City of Columbia*, 378 U.S. 347 (1964) (citing *Kring v. Missouri*, 107 U.S 221 (1883)). For *Jones* that law was N.C. Gen. Stat. §148-4et al. (Cum. Supp. 1974), hereinafter, "§148," for petitioner, it was id. §148-4 et al., coupled with NCAC, supra. Section 148-4 stated "[t]he Secretary of Correction shall have control and custody of all prisoners serving sentence in the State prison system, and such prisoners shall be subject to all the rules and regulations legally adopted for the

5

government thereof." The statute further provides that "[t]he rules and regulations . . . may contain provisions relating to . . . allowances of time for good behavior . . . etc." Id. §148-13 (Cum. Supp. 1974-75). From this the State Court reasoned that the DOC had "implicit authority" to determine the purposes for which credits may be awarded, though no express statutory authority existed that allowed them to withhold, withdraw, or limit credits previously awarded.[3] As applied to petitioner, however, the question surrounding discretion is irrelevant because NCAC is one of the provisions authorized under id. §148-13. Petitioner argues that once it was enacted, any DOC discretion, authorized or not, was forfeited to the extent it was covered by the mandatory dictates of NCAC.[4] Id.

Though the *Jones* Court discussed id. NCAC, and determined it sound, they also found that Jones had asserted no statute or regulation that entitled him to have his credits applied towards his unconditional release. Id.; also see *Cochran v. Morris*, 73 F. 3d 1310, 1318 (4th Cir. 1996) stating "due process claim failed because prisoner did not state relevant regulation creating liberty interest." As to petitioner, the record will reflect that, in every pleading, on every level of the State's Courts, he asserted the statutes and regulations that accorded him the constitutional right to his credits and he ask this Court to take judicial of it. See *Colonial Penn*, supra.

Though *Jones* failed to expressly assert a statute or regulation entitling him to unconditional release, the *Jones* Court still seemed to consider NCAC's applicability to the administration of his sentence and ultimately concluded that it was inapplicable to him because it

---

[3] Addressing this point in her dissent in Jones, Justice Timmons-Goodson highlights the glaring absence of DOC discretion by saying "[n]othing in any relevant provision of the North Carolina General Statutes, the North Carolina Administrative Code, the DOC's policies, procedures, or regulations, or North Carolina case law precedent specifically authorizes the Secretary of Correction to apply good-time, gain time, merit time, or any other awarded credits only for certain purposes and not for others."

[4] See clauses 1-5 of 5 N.C. Admin. Code 2B .0100-.0104 (1976), infra.

did not exist at the time of his offense. Id.; also see *Buie*, supra. Consequently, they held that the DOC could withdraw, withhold or limit application of his credits because §14-2 was "silent as to its administration" and that §148 allowed them the authority to determine the purpose for which his credits could be used. See *Jones* (citation omitted). However, while perhaps initially true, subsequent expansions of NCAC[5] clearly adopted the *Jones*-class of prisoners as well. See e.g. *Lynce v. Mathis*, 519 U.S. 433 (1997), holding that prisoners are entitled to the benefit of credits even if the legislation, regulations, or policies granting them occurred after the date of their offense so long as they are part of a continuing sentence-reduction scheme. Id. Here, distinguishing himself further from *Jones*, petitioner reminds this Court that at all relevant time, the administration of petitioner's credits was governed by NCAC which entitled him to due process protections that cannot be revoked absent minimum procedural guarantees. See e.g. *Wolff v. McDonnell*, 418 U.S. 539 (1974). Therefore, for the Court to allow the DOC to 'withdraw,' 'withhold,' or 'limit' petitioner's mandatory credits pursuant to *Jones* would, in effect, serve to eviscerate petitioner's Due Process protections established by *Buie* and *Wolff*, supra, respectively.

Specifically in *Wolff* the prisoner claimed, amongst other things, that the prison's disciplinary proceedings were insufficient to protect against the loss of good time credits and thereby violated the Due Process Clause of the U.S. Constitution and the Supreme Court agreed (stating that "the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison . . . [b]ut the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment liberty." Id.

---

[5] Additional mandatory sentence-reduction legislation, made retroactive was enacted and subsequently promulgated by DOC in 1980. And in 1983 more credits were granted(e.g. one day's credit for each day served). See 5 N.C. Admin. Code 2B §§.0100-.0104 (Mar. 1980; Sept. 1983).

7

In petitioner's case, the DOC created identical rights to the good time discussed in *Wolff* and through NCAC's clause 2. recognized that its deprivation is a sanction authorized for misconduct. Thus, by blindly clinging to the surrendered discretion of §148, the DOC committed a retroactive trespass on petitioner's liberty interest that violated his right to due process, when they decided to arbitrarily revoke his credits by applying a judicially-created "compelling interest versus a de minimus liberty interest test," that they were precluded from doing one nanosecond after NCAC's enactment, let alone 40 years later. Id. In addition to violating the Due Process Clause, they also violated the Ex Post Facto Clause of the U.S. Constitution. See *Buie*, supra, (emphasis added); (also see *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) holding that relevant statutes or regulations sufficiently limit prison officials discretion in taking good time; also see *Board of Pardon v. Allen*, 482 U.S. 369, 374-80; 107 S. Ct. 2415 (1987)).

The Supreme Court has also held ad nauseum that the Due Process and Ex Post Facto Clauses of the U.S. Constitution are violated when States arbitrarily deprive parties of the benefit of credits or other release opportunities earned under existing state law, either by failing to apply the law faithfully or by applying changes in the law retroactively. See e.g. *Weaver v. Graham*, 450 U.S. 24 (1981) (citing *Wolff*); and *Lynce*, supra. At the time of the DOC's actions in petitioner's case they deviated, from their decades-old practice of applying credits for all purposes to any prisoner serving a determinate term-of-year sentence, by limiting the purpose of petitioner's credits. Given *Buie's* mandate that "it is the law at the time of offense that governs punishment" this limitation equals a deprivation and is clearly, both, an unfaithful application of the law and retroactive because occurs 41 years after enactment. Id. (See *Factual and Legal Background*, supra).

2. *Method of Sentence Administration for §14-2 Sentences*

8

Once the nature of §14-2 was settled, the next question was how it was intended to be administered. Here, an examination of NCAC's language seems appropriate. In relevant part, it reads as follows:

1. All inmates, including Committed Youthful Offenders and those with life terms, SHALL BE allowed . . . Good-time for acceptable behavior for each year served.

2. Good-time SHALL BE subjected to forfeiture for misbehavior as determined by appropriate disciplinary action.

3. Regular Good-time SHALL BE computed on a pro rata basis. . . and SHALL BE equivalent of a . . . days . . . per . . . month . . . of total sentence length.

4. All inmates who perform productive work, full or part-time, or participate in specific training programs SHALL BE allowed additional Gain time. . . which SHALL BE regulated as Gained-Time in three (3) categories: Gain time I . . . equals days per month; Number II Gain-time equals . . . days per month; and Number III Gain-time equals to. . . days per month.

5. Gain-time SHALL NOT BE subject to forfeiture for misbehavior . . . and SHALL BE the equivalent of . . . the remaining sentence.

See *5 N.C. Admin. Code 2B* §§ .0101-.0103 et seq. (Feb. 1, 1976); also see *Div. of Prisons, N.C. Dep't of Corr., Policy and Procedures ch. B*, § .0109 (Oct. 5, 2007).

Once examined, the question becomes how to construe it. Such judicial scrutiny of penal law has a rich ancestry and that lineage includes, perhaps, no greater sage on interpreting them than the late Chief Justice of the Supreme Court, John Marshall, who nearly two centuries ago stated in *United States v. Wiltberger*:

"It has been said, that although penal laws are to be construed strictly, the intention of the legislature must govern in their construction. That if a case be within the intentions, it must be considered as if within the letter of the statute . . . . The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words there is no room for construction. . . ."

9

*United States v. Wiltberger*, 18 U.S. (5 Wheat) 76 (1820).

NCAC clearly sired a cognizable mandatory state-created liberty interest and whether the above-enumerated clauses are construed singularly or collectively, their intent was clear—credits were to be automatically applied for all purposes to determinate sentences, including §14-2's 80 year "life" sentences. See id. *Board of Pardons*, supra, at 378 n. 9, which [r]ecognizes the relevance of regulations promulgated under a statute and *Hewitt v. Helms*, 459 U.S. 460 at 470-471; 103 S. Ct. 864 (1983) holding that "[d]etermination of said entitlements can be made by considering statute and regulations together." NCAC's mandatory language was undeniable and, although it was a relative toddler at the time of petitioner's offense, its instructions were staunch and specific as to who the intended beneficiaries were and how their credits were to be administered. The words employed were plain, unambiguous, and abundantly clear that the State intended for its prisoner's credits to have "the real substance" discussed by the Supreme Court in *Wolff*. Id., infra, at 418 U.S. 557.

Yet, in the face of NCAC's dictates and the DOC's own admission that §14-2 was a determinate sentence the DOC, with the complicity of the *Jones* Court's i.e. their judicial construction of the compelling interest test mentioned, supra, coupled with the abdication of their power and duties,[6] still continued their arbitrary revolt against NCAC. This revolt resulted in a coup of NCAC's central benefit to *Jones*—his right to an unconditional release. As applied to petitioner, this construction also created a perverse 'end-around' NCAC's due process requirement and was, itself, a violation of due process because it allowed the DOC to ignore, not only *Wolff* and other federal law, but its own policies and regulations as well. See *Weaver*, supra.

Here, it should not go unnoticed by this Court that at the time of NCAC's enactment,

---

[6] For a full discussion see petitioner's argument under II. Ex Post Facto section, infra.

N.C. Gen. Stat. §148-11 (1974) stated "[t]he DOC's Secretary shall propose rules and regulations for the government of the state prison system which shall become effective when approved by the DOC." Here, it requires no 'phantom inference' to confidently proclaim that NCAC's very existence means the DOC "approved it" and they purposely employed the word SHALL rather than MAY because they intended its meaning to be resolute, to prevent uncertainty, particularly as it relates to "implicit"[7] discretion. See *Wilkinson* at 545 U.S. 220-224. Again, as to their intent that it apply to the mitigation of all determinate sentences, including 'life' sentences, one merely has to read clause one, supra. Were it not true, it would have been simple for them to say so.

Moreover, petitioner argues, a continued review of id. NCAC, supra, namely its clauses three and five, confirms that the law's purpose and intent was to encourage good behavior and promote work or program participation, by guaranteeing an automatic reduction of the "total sentence length" and "the remainder of the sentence" of prisoner's serving determinate sentences. By definition, achievement of this purpose could only be accomplished by calculating the total credits amassed and subtracting that number from the total length of the prisoner's sentence. Where parole was either refused or not granted, the accumulation of these credits inevitably created an unconditional discharge date. Id. §148-13. This was the ultimate benefit bargained for and anticipated by this petitioner when he plea-bargained with the State over four decades ago and now that his case is ripe for demanding that benefit, *Jones* is being extended to him. This violates due process. See *Wolff* et al.

As previously discussed, the *Jones* Court interpreted §148 to give the DOC certain power and determined that implicit in that power was the authority to determine the purpose for which time is allowed. See *Jones* (citation omitted). While clearly, §148 gave the DOC power to allow for good time and, though questionable, the 'implied authority' to determine its purpose as well,

---

[7] Referring to *Jones* Court's justification for DOC's unauthorized use of discretion.

Case 5:18-cv-00092-MR   Document 1-1   Filed 06/05/18   Page 16 of 31

in the instant case, the Court's reasoning appears not only overbroad but circular. The Court failed to note that even if the DOC, in fact, possessed such authority, they exercised it when they created NCAC and dictated that its credits be applied to the total length or remainder of an inmate's sentence. Id. If they desired to retain authority to impact credit application by any method, other than clause 2. of NCAC, they would have expressed it then because that was the time to do it. Again, to try now violates the ex post facto and due process clauses. See e.g. *Waddell v. Dep't of Corr.*, 680 F. 3d 384 (4th Cir. 2012), (a companion case to *Jones*), where the United States Fourth Circuit Court of Appeals held such state-action unconstitutional stating "[t]he basic idea of state-created liberty interest is that when a state law, (i.e. regulations, statutes, or state constitutions), limits the discretion of officials . . . the people affected by that state law have a liberty interest in having that law followed. Due process then requires Fair procedures to determine whether the defined circumstances exist." (Emphasis added.)

This is precisely the scenario in the instant case. The previously enumerated provisions of the constitution, statutes and regulations, existing at the time of petitioner's offense, combined to give him the requisite liberty interest defined in *Wolff*, and limited the discretion of DOC officials. Thus, the DOC's decision to retroactively alter the effect of those provisions, namely NCAC, exceeded the scope of any discretion they may have had and clearly affects this petitioner who has a liberty interest in having that law followed.

The DOC conceded in *Jones*, that if Jones's credits had been applied, he would have a liberty interest in them but stated that it had never done so. However, the Court acknowledged the trial court's uncontroverted findings that the DOC had—for reasons that were unclear—retroactively altered the nature of the credits previously awarded to *Jones* and other similarly situated inmates by changing the status from 'applied' to 'pending' after another

12

prisoner, Bobby Bowden, filed a writ of habeas corpus demanding his immediate release from prison. See *Jones* 364 N.C. 249 at 264; also see *State v. Bowden*, 193 N.C. App. 597, 598 (2008), disc. rev. improvidently allowed, 363 N.C. 621 (2009). Petitioner asks this Court to also take judicial notice of that finding. See id. *Colonial Penn*, supra. When questioned about the arbitrary change, the DOC claimed to be 'storing' the credits in the event of a commutation. Here, petitioner is perplexed as to what there was to commute. Admittedly, the sentence in question had already been declared a determinate term of 80 years. See id. §14-2, supra. Nevertheless, the *Jones* Court determined that the credit-alteration was constitutional for reasons previously cited. Here, petitioner argues again that, in order to apply the judicially constructed rationale of *Jones* to petitioner, the Court, by the very nature of its ruling, had to ignore NCAC. See *Wolff;* also see *Buie*, (citing *Kring*), supra, (emphasis added).

Therefore, whether the taking of petitioner's credits be classified as 'stored,' a 'withdrawal,' 'withholding,' or 'limitation' is irrelevant. Its sustenance depends on the unconstitutional abrogation of a right that petitioner has an expectation in. NCAC made the credit application mandatory and automatic. See e.g. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (noting that a prisoner's liberty interest "may arise from an expectation or interest created by state law or policies;" or *Sandin v. Conner*, 515 U.S. 472, 477-78 (1995) (citing *Wolff).*

Expounding on this point, the Supreme Court has recognized that "[p]risoners have a liberty interest in avoiding withdrawal of [a] state-created system of good-time credits." See *Wilkinson*, supra (citing *Wolff,* 418 U.S. at 556-558); *Weaver*, supra, determining that the altering of a statute in a manner that reduces the availability of gain time for inmates' good conduct violated the prohibition against ex post facto laws and was therefore unconstitutional). Therefore, when a State creates a right to a shortened prison sentence through the accumulation of credits

for good behavior," the prisoner has a cognizable liberty interest in the credits that cannot be "arbitrarily abrogated." Id. *Wolff*, at 557.

Though the State Court properly cited *Wolff* in *Jones,* and purported to apply it to its analysis of his due process claim, as applied to petitioner, they either improperly construed, or completely disregarded its tenets. The majority completely ignored the fact that the DOC's arbitrary withdrawal of Jones's, and now petitioner's, credits was done without providing either any due process whatsoever beforehand. They determined that due process requirements were met because reduction-credits were, subsequently, applied to both parole and custody grade eligibility. Id. at 264. Petitioner argues, that this ad hoc reasoning for credit application is the difference between an apple versus an orange i.e. parole is discretionary, thus largely constitutionally unprotected, whereas the mandatory award of sentence-reduction credits is wholly protected. Id., also see e.g. *Greenholtz v. Inmates of Nebraska Penal Complex,* 442 U.S. 1 (1979); and *NCAC.* Just as petitioner questions the sincerity of the DOC's 'misunderstanding' of §14-2, he suspects the application of credits for 'parole-custody' purposes was merely a ruse, especially when one considers that *Jones*-class prisoners had been eligible for parole some 22 years before the filing of his habeas petition, therefore making moot the application of his credits for this purpose. Even if true, however, pursuant to id. NCAC, supra, the DOC's effort fails in petitioner's case because the limitation still constitutes a taking i.e. forfeiture without the due process method enumerated. See NCAC's cl. 2, supra; also see *Kentucky Dep't of Corr.* and *Wilkinson,* supra. (Emphasis added). Here petitioner, again, reminds this Court that, in any event, the DOC's retroactive action does not escape the ex post facto snare because nowhere in the statutes, including id. §148, supra, is it authorized.

        a.       *Unreasonable Application of the Law Analysis*

Petitioner next argues that the DOC's actions were unreasonable because they increased petitioner's punishment well beyond what the legislature intended. Id. *Buie*, supra and infra. In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court concluded that the State Supreme Court's decision to apply a 'reasonable jurist test' was contrary to, or involved an unreasonable application of, the clearly established federal law that a defendant is constitutionally entitled to the effective assistance of counsel. Petitioner argues, as applied to him, the *Jones* Court has erred in similar fashion.

In *Jones*, the Court went to great lengths to distinguish his first-degree murder conviction from those convicted for lesser degrees of homicide and other crimes but received the same §14-2 sentence. See *Jones* 364 NC at 252. They reasoned that because it was the State's most severe crime, §148 gave the DOC the discretion to weigh the State's "compelling interest in public safety versus Jones's de minimus liberty interest," in his credits, when determining the application of his good time. Id. Again, while perhaps permissible as applied to *Jones*, when applied to petitioner the use of such an ad hoc test is clearly an unreasonable application of the law and violates due process because nowhere in NCAC's explicit instructions does it even remotely hint at the DOC having discretion to apply a balancing test before applying a prisoner's credits. Moreover, presumably, petitioner argues, public safety was already factored into the DOC's determination of who would receive NCAC's credits before they promulgated it. Notably, this presumption is buttressed by the absence of §14-2 sentences from the DOC's list of the seven categories of inmates excluded from earning good time and gain time. See id. NCAC, supra, and *"Dept. of Corr. Div. of Prisons, Policy and Procedure,* ch. B., section .0110(6) (1995) (defining *"Sentence Reduction Credits).*

The *Jones* Court went on to find as fact that the DOC had never applied credits towards the unconditional release of an inmate serving a "life" sentence. As applied to petitioner, however, this argument is irrelevant and fails on multiple fronts. First, at the time of petitioner's offense, the law was clear that his sentence was 80 years. See *Buie*, supra. Second, the State had created a mandatory credit-reduction scheme that was to be automatically applied to a sentence for all purposes, including reduction of the total length of a prisoner's sentence. See clause 3 of id. NCAC. Thus, this statutory command makes irrelevant any past methods of credit application. Third, at no point, prior to April 8, 1974 and subsequent to June 30, 1978, had a life sentence been defined as a determinate term of 80 years and barring parole, under this law, it would have taken its earliest recipient(s) approximately 32 years, i.e. around 2006, before enough time had accumulated for him or her to claim their right to unconditional release which, based upon information and belief, is precisely around the time that *Bowden*, supra, filed. Finally, because the sentence at issue is determinate in nature it makes baseless the DOC-argument that they have never applied credits in this fashion because they acknowledged in *Jones* that historically they have always applied credits towards the unconditional release date of 'any prisoner' serving a determinate sentence and petitioner ask this Court to take judicial notice of this admission. See id. *Colonial Penn, supra.*

Proceeding under his lawyer's guidance regarding, and knowledge and understanding of, the DOC's administration of determinate (flat) sentences, as well as the cloak of the U.S. Constitution's promise of Equal Protection under the law, petitioner had no reason to expect that his determinate sentence would receive arbitrary treatment 40 years down the road. In fact, the DOC's historical practice made petitioner's expectation of an unconditional discharge all the more reasonable and warranted. See *Wilkinson*, supra.

16

### b. Contrary to Clearly Established Law Analysis

The *Jones* Court's determination that the DOC could alter application of his credits based on their compelling interest in public safety is contrary to clearly established law, when applied to petitioner. Nowhere in the State's penal statutes, including NCAC, does language appear that authorizes such subjective determinations and, given the venerable rule in *Buie,* a retroactive departure from the intent and purpose of that law is contrary to it. See *Williams,* supra. Refusing to burden this Court with more lengthy, and possibly, redundant analysis, petitioner makes the following points. First, petitioner is serving a 'life' sentence which the legislature defined as a determinate sentence of 80 years . See §14-2, supra. Second, the DOC has always applied good time, gain time, and merit time credits to determinate sentences for purposes of unconditional release. See id. *Jones,* supra. And, third, the DOC retroactively altered those credits, to petitioner's disadvantage, in a manner that defies the legislature's intent thus making the DOC's action contrary to clearly established law. See *Buie*, supra and infra and *Williams*, supra (Emphasis added.)

## II.   THE STATE'S RETROACTIVE WITHDRAWAL OF PETITIONER'S SENTENCE-REDUCTION CREDITS VIOLATED THE EX POST FACTO CLAUSE OF THE U.S. CONSTITUTION

*"No . . . ex post facto law shall be passed."* U.S. Const. Art. I, sec. 9. cl. 3

### B. Violation of Ex Post Facto Analysis

Clearly, NCAC sired the cognizable liberty interest that *Wolff* held cannot be revoked absent minimum procedural guarantees. But, through skullduggery, supported by the judicial activism alluded to supra, the DOC revoked petitioner's credits and, in so doing, violated the ex

post facto clause. Id.

Again, while the DOC's tampering with *Jones's* credits could be within the purview of their authority, no such authority existed in petitioner's case and under no circumstance does the law permit the DOC to alter NCAC in a manner that increases petitioner's punishment. Id. See *U.S. Const. Amend.* VIII & IX; also see id. *Buie,* supra. Past attempts at such egregious and unfair practices have been consistently rebuffed by the Supreme Court who for 214 years, beginning with *Calder v. Bull,* 3 Dall. 386, 390 (1798) and later *Ogden v. Blackledge,* 6 U.S. (2 Cranch) 272, 277 (1804), hereinafter (*"Blackledge"*), has stood sentinel over the ex post facto battlefield and constructed a myriad of blockade-forming precedent to ward off the perpetual assaults on its sanctity. In *Blackledge* they held "[t]he ex post facto prohibition also upholds the separation of powers by confining the legislature to penal decisions with prospective effect and the judiciary and executive to applications of existing penal law." Soon after came *Fletcher v. Peck,* 6 Cranch 87, 138 (1810), which gave rise to *Kring v. Missouri,* 107 U.S. 221, 228 (1883), which stated:

> "[W]e are of the opinion that any law passed after the commission of an offense which . . . in relation to that offense, or its consequences, alters the situation of a party to his disadvantage, is an Ex Post Facto law and . . . no one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time,"

citing *Cummings v. Missouri,* 71 U.S.277 (4 Wall) (1867); continuing in *Hopt v. Territory of Utah,* 110 U.S. 574, 589 (1884); *Duncan v. Missouri,* 152 U.S. 377, 382 (1894); *Gibson v. Mississippi,* 162 U.S. 565, 589-590 (1896); *Thompson v. Missouri,* 171 U.S. 380, 382, 387 (1898); *Hawker v. New York,* 170 U.S. 189, 201 (1898); *Mallett v. North Carolina,* 181 U.S. 589,

593-594 (1901); *Malloy v. South Carolina*, 237 U.S. 180, 183-184 (1915); *Dobbert v. Florida*, 432 U.S. 282, 293 (1977); *Miller v. Florida*, 482 U.S. 423 (1987); *Collins v. Youngblood*, 497 U.S. 37 (1990); and more recently *Lynce*, supra. Surely, the DOC's refusal to apply petitioner's credits towards an unconditional release date thus requiring him to remain imprisoned for 40 years longer than the legislature intended alters the situation to his disadvantage.

Petitioner ask this Court to take judicial notice of the *Jones* Court's acknowledgment that "[t]he manner of executing the sentence and the mitigation of punishment are determined by the legislative department, and what the Legislature has determined in that regard must be put in force and effect by administrative officers." See id. *Colonial Penn* and *Jones,* supra. More importantly, petitioner wants noticed the *Jones* Court's abdication of their judicial power when they deferred to the DOC the duty to interpret the law and its accompanying policies and regulations, etc. governing petitioner's case. See *Jones* (citation omitted) and *Colonial Penn,* supra. Again, though they purported to have conducted a review of the relevant law in *Jones*, for purposes of ex post facto analysis that review, at best, appears to be cursory and, as applied to petitioner, equaled no review at all. The nutrients essential for such review i.e. impartiality, fundamental fairness, etc. should be expectedly absent when the body charged with providing it abdicates that responsibility in favor of an interested party—here the DOC. As particularly applied to petitioner, this abdication gave the DOC the power to act as the governmental trinity which in old western parlance meant 'the judge (judiciary), the jury (legislature), and the executioner (executive). In effect, the *Jones* Court's decision denied this petitioner the Constitution's intended checks and balances. *Blackledge*, supra, found that such judicial neglect, itself, violates both the separation of powers doctrine and ex post facto clauses.

Moreover, in addition to violating those laws, the *Jones* Court's application to petitioner its previously mentioned ad hoc judicial construction, denies his right to due process because it provides no real review of the merits of petitioner's claims. See e.g. *Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 100 (1938) where the Supreme Court held "[i]n order that the constitutional mandate may not become a dead letter, we are bound to decide for ourselves whether a [commitment] was made, what are its terms and conditions, and whether the State has, by later legislation, impaired its obligation."[8] In *Jones*, the omissions occurring because of the judicial construction on one hand, and the Court's abdication of its duties on the other, are exponentially more critical to the analysis of petitioner's case. To recap, the *Jones* Court found that Jones never alleged that any legislation or regulation altered the award of his credits. Petitioner did—NCAC. They further found that the DOC never changed its interpretation of its regulations when, in fact, nowhere in *Jones* does it appear that the DOC's position was based upon any interpretation (or misinterpretation) of its regulations. See *Jones* at 364 N.C. 268. In fact, their position to retroactively alter credits contravenes the regulations themselves and is the arbitrary abrogation that violates *Wolff*. (Emphasis added). Indeed, the *Jones* Court failed to recognize the distinction between applying NCAC to petitioner's case versus *Jones's,* the consequence of which unconstitutionally increased petitioner's punishment. Finally, the Court ignored the rule in *Buie* that "[i]f a State legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. . . [I]ndeed, an unforeseeable judicial enlargement of a . . . statute, applied retroactively, operates precisely like an Ex Post Facto law, such as Article I, section 10 of the U.S. Constitution forbids. . . ." (See *Lindsey v. Washington*

---

[8] See petitioner's impairment of contract analysis, infra.

*State*, 301 U.S. 397, 401 (1937), citing *Beazell v. Ohio*, 269 U.S. 167, 170 (1925); see also *Weaver*, supra, 450 U.S. at 30-31). As applied to petitioner, the *Jones* Court has done just that.

Possessing no powers of clairvoyance at the time of his conviction, petitioner could not have foreseen that one day his State Court would collaborate with a State agency to retroactively reconstruct clearly established laws, that gave automatic mandatory credits, in a manner that would be contrary to the purpose of that law and, thereby, eliminate an essential portion of its benefits i.e. a shorter sentence. The existing criminal sanction, with its attendant mitigation, gave no fair warning of a future reconstruction that would shrink its effect. Thus, there was no due process. See *Buie* 378 U.S. at 353-354; see also *Hall General Principles of Criminal Law,* 2d Ed. 1960 at 58-59).

### III. THE STATE'S RETROACTIVE WITHDRAWAL OF PETITIONER'S SENTENCE-REDUCTION CREDITS VIOLATED THE IMPAIRMENT OF CONTRACTS CLAUSE OF THE U.S. CONSTITUTION

"No State shall . . . impair the Obligation of Contracts." U.S. Const. Article I, sec. 10, cl. 1

#### C. *Violation of Impairment of Contract Analysis*

In addition to violating petitioner's right to due process by retroactively altering his credits and refusing to fully apply them (citing *Wolff*), petitioner argues that the DOC's actions and State Court's extension of *Jones* to petitioner's case also impairs his contract with the State because it partially revokes the plea-bargains' benefit to petitioner. See *U.S. Const.* Art. I.§10(3). Petitioner further argues that the benefits of a plea-bargain continue well past a party's day in court. In support of this argument petitioner again cites *Fletcher*, supra, but this time as the patriarchal case for contract jurisprudence. *Fletcher* stated "[w]hen a law is in its nature a contract, when absolute rights have vested under that contract, a repeal of the law cannot divest

their rights."[9] Also see *U.S. Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174 (1980).

Beginning with the acceptance of the terms of his plea-bargain, continuing with his acceptance of the terms of NCAC, petitioner's rights have long-since vested and the Supreme Court has long-held that a plea-bargain is indeed a contract as long as they are voluntarily entered. See e.g. *Brady v. United States*, 397 U.S. 742 (1970). Petitioner has met those requirements. See attached exhibit #1.

As parties are bound by both the explicit and implicit terms—and their attendant consequences—existing at the time of a contract's execution, they must be construed according to the laws existing at that time. See id. *Fletcher,* supra. Any governmental action that serves to thwart, alter, or limit the benefit of said terms and consequences impairs the contract. See e.g. *Puckett v. U.S.*, 556 U.S. 129, 137 (2009). To illustrate his point, petitioner directs this Court to *Wood v. Lovett*, 313 U.S. 362 (1941), a case where the facts are stunningly analogous to those in petitioner's case. There, the State had entered a sales contract made valid with the aid of a curing statute whose subsequent repeal would impair the party's contract rights. The Court held that "[t]he terms of a statute according rights and immunities . . . are a part of the obligation . . . made pursuant to it." Id. 313 U.S. at 371. Here, petitioner's plea-bargain is the contract entitling him to the benefits contained in the clauses of NCAC, supra, and the subsequent "savings clause" in the 1993 Sessions Law ch. 24, sec. 14(b) Extra Session 1994, which accorded and preserved petitioner's "rights and immunities" including the automatic application of mandatory credits. See §148, supra.

As in *Wood*, supra, the DOC's unauthorized decision to arbitrarily limit petitioner's

---

[9] While understanding that this Court does not consider State law for purposes of habeas review, petitioner thought it prudent for illustrative purposes to show that North Carolina obviously agrees with *Fletcher*. See N.C. Gen. Stat. §12-2, which states "[t]he repeal of a statute shall not affect any action brought before the repeal, for any forfeitures incurred, or for the recovery of any rights accruing under such statute."

credits to parole and custody consideration, but withhold them from the reduction of the total length of his sentence is tantamount to a repeal of NCAC's grant of that right and thereby unconstitutionally impairs petitioner's contract rights bargained for over 40 years ago. Petitioner argues that for courts to allow the DOC to whimsically modify agreements between the State and its subjects in this fashion renders the 'quid pro quo' requirement of a contract, here a plea-bargain, one-sided and will forever leave, as in this case, the petitioner-promisee uncertain of whether they are really getting what they bargained for. Since the State Court neglected to review petitioner's case independent of *Jones*, petitioner argues that this court should grant review to satisfy the Supreme Court's concern in id. *Indiana ex rel. Anderson*, supra. (Emphasis added.)

Due to public outcry,[10] what many have referred to as a "hard case" is really not hard at all; In fact, it is quite simple. In establishing our country, the framers considered man's propensity for criminal behavior and created a penal system of laws to punish it. While forever fallible, it will always provide the bedrock for an ordered society and to preserve it one need only to continue following it. This truism was obviously recognized by the late United States Supreme Court Justice Oliver Wendell Holmes when he appropriately cautioned against allowing "immediate interests [to] exercise a kind of hydraulic pressure which makes what was previously clear seem doubtful, and before which even well settled principles of law will bend." *N. Securities Co. v. U.S.,* 193 U.S. 197, 400-01, 48 L. Ed. 679, 726 (1904).

In the instant case, the law has always been clear and, when one considers all the

---

[10]Locke, Mandy, *Purdue Will Block Inmates' Release*, News & Observer, Oct. 23, 2009, available at 2009 WLNR 21055443

Locke, Mandy, *State Forced To Free 20 Violent Criminals*, News & Observer, Oct. 16, 2009, available at 2009 WLNR20447698.

Statement from the Governor Regarding Prisoner Release, *Governor Says Offenders Will Not Be Turned Loose*, Oct. 22, 2009, available at www.governor.state.nc.us/NewsItems/PressRelease Detail.aspx?newsItemid=727.

arguments of petitioner in the light most favorable to the State, there is still no real genuine issue of any material fact. The State relies on *Jones* to deny petitioner his unconditional release and *Jones* is clearly inapplicable. Thus, without more, the lower courts should have granted summary judgment to petitioner.

Given the reasons that led to the lengthy pedigree of litigation surrounding the issue in *Jones*, the DOC is acutely aware of the injustice of its actions. Here and now, they should no longer be allowed to perpetuate it by violating the ex post facto, due process, equal protection, and impairment of contract clauses all under the feigned shield of ignorance. To condone it offends all notions of fundamental fairness. Over 40 years ago, petitioner offended the people of North Carolina and has paid the sanction she said he owed; he should not now be made to pay double.

## CONCLUSION

For the foregoing reasons, this Court should allow petitioner's application for writ of habeas corpus.

Respectfully submitted this the ___2___ day of _____June_____, 20_11_.

/s/ _Marshall Lee Brown jr._

Marshall L. Brown, Jr.-Petitioner
Opus#0050673
Alexander Correctional Institution
633 Old Landfill Road
Taylorsville, NC 28681

# EXHIBIT #1

STATE OF NORTH CAROLINA

County of _Alexander_

State of North Carolina Vs.

_Marshall Lee Brown, Jr._

File # _77-CRS-1637_

Film # _____

In The General Court of Justice

_Superior_ Court Division

TRANSCRIPT OF PLEA

The defendant, having tendered a plea of _Guilty_ and being first duly sworn, makes the following answers to the questions asked by the Presiding Judge:

1. Are you able to hear and understand me? — Answer _yes_

2. Do you understand that you have the right to remain silent and that any statement you make may be used against you? — Answer _yes_

3. Are you now under the influence of alcohol, drugs, medicines, pills, or any other intoxicants? — Answer _no_

4. Have you discussed your case fully with your lawyer and are you satisfied with his services? — Answer _yes_

5. Do you understand that you are pleading (guilty) (no contest) to the felonies of _Second Degree Murder_ _____?

   misdemeanors of _____? — Answer _yes_

6. Have the charges been explained to you by your attorney and do you understand the nature of the charges? — Answer _yes_

7. Do you understand that upon your plea you could be imprisoned for a maximum of _life years minimum_ months (and that the mandatory minimum sentence is _____)? — Answer _yes_

8. Do you understand that you have the right to plead not guilty and be tried by a jury and be confronted by the witnesses against you, and by this plea you give up these and your other constitutional rights relating to trial by jury? — Answer _yes_

9. Do you now plead (guilty) (no contest)? — Answer _yes_

10. (a) [If applicable] Are you in fact guilty? — Answer _yes_

    (b) [If applicable] Do you understand that upon your plea of no contest you will be treated as guilty whether or not you admit your guilt? — Answer _____

11. Have you agreed to plead as a part of a plea bargain? Before you answer, I advise you that the Courts have approved plea bargaining and if there is one, you may advise me truthfully without fear of incurring my disapproval. — Answer _yes._

12. [If applicable] The District Attorney and your counsel have informed the Court that these are all the terms and conditions of your plea:

_That prayer for judgment be continued in said case until the November 1977 term of Alexander Co. Criminal Superior Court and that the defendant be kept in the Alexander County Jail without bond until sentence is pronounced in said case; further that the defendant will testify for and on behalf of the State of North Carolina in the cases against Kenneth Barnard Holmes, relating all facts and circumstances concerning the involvement of Kenneth B. Holmes in the murder of one Horace Andrew Morrison, jr._

(a) Is this correct? Answer _yes_   (b) Do you accept this arrangement? Answer _yes_

*(Continued on Reverse)*

G.S. 15A-1023   AOC-L Form 290

TRANSCRIPT OF PLEA

EXHIBIT #1

TRANSCRIPT OF PLEA (continued)

13. [Other than what I have just said] has anyone made you any promises or threatened you in any way to cause you to enter this plea?   Answer _NO_

14. Do you enter this plea of your own free will, understanding what you are doing?   Answer _Yes_

15. Do you have any questions about what I have just said to you?   Answer _NO_

I am _19_ years of age and completed the _12th_ grade of school. (GED)

I have read or have heard read all of these questions and understand them. The answers shown are the ones I gave in open court and they are true and accurate. Neither my lawyer nor anyone else has told me to give false answers in order to have the Court accept my plea in this case. The conditions of the plea as stated on the reverse hereof, if any, are accurate.

_September 8, 1977_ _____   _Marshall L. Brown Jr._ _____
Date                              Defendant

Sworn to and subscribed before me this _8th_ day of _September_, 19 _77_.

_Marianter C. White, Deputy_
Clerk of Superior Court

* * * * * * * * * * * *

As Attorney for the defendant, _Marshall Lee Brown Jr._
I hereby certify that the conditions stated on the reverse hereof, if any, upon which the defendant's plea was entered are correct and they are agreed to by the defendant and myself upon which the defendant's plea was entered. I further certify that I have fully explained to the defendant the nature and elements of the charges to which he is pleading.

_September 8, 1977_   _Edward S Hedrick_
Date                              Attorney for Defendant

As prosecutor for the _7th_ Judicial District, I hereby certify that the conditions stated on the reverse hereof, if any, are the terms agreed to by the defendant and his counsel and myself for the entry of the plea by the defendant to the charge in this case.

_____
Date                              Prosecutor

* * * * * * * * * * * * * * * * *

PLEA ADJUDICATION

Upon consideration of the record proper, evidence presented, answers of defendant, and statements of counsel for the defendant and the prosecutor, the undersigned finds:

1. That there is a factual basis for the entry of the plea.

2. That the defendant is satisfied with his counsel.

3. That the plea is the informed choice of the defendant and is made freely, voluntarily, and understandingly.

The defendant's plea is hereby accepted by the Court and is ordered recorded.

This _8th_ day of _September_, 19 _77_.

_____
Presiding Judge