# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:18-cv-00092-FDW

| | |
|---|---|
| MARSHALL LEE BROWN, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ERIK A. HOOKS, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court upon Respondent's Motion for Summary Judgment (Doc. No. 4) seeking denial of Petitioner Marshall Lee Brown, Jr.'s pro se Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 (Doc. Nos. 1).

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on September 8, 1977, in the Superior Court of Alexander County, pled guilty to second-degree murder pursuant to N.C. Gen. Stat. § 14-17, in case 77 CRS 1627, with prayer for judgment continued until after Petitioner testified for the State in another murder case. On November 16, 1977, Petitioner was sentenced to life in prison. He did not appeal.

While serving his life sentence, Petitioner escaped from prison and committed another murder. He pled no contest to second-degree murder on March 25, 2002 and was given a concurrent 240-297 month sentence. State v. Brown, 616 S.E.2d 30, 2005 WL 1804816, 2005 N.C. App. LEXIS 1486 (N.C. Ct. App. 2005) (unpublished table decision).

On or about July 25, 2017, Petitioner filed a pro se application for writ of habeas corpus in the Superior Court of Alexander County, which was denied on August 16, 2017. On January 22, 2018, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals

("NCCOA"); certiorari was denied on January 25, 2018. Petitioner filed a pro se certiorari petition in the North Carolina Supreme Court ("NCSC") on March 13, 2018, which was denied on March 19, 2018.

On June 4, 2018, Petitioner filed the instant habeas petition raising four claims that challenge the execution of his 1977 sentence. (Doc. No. 1.) Respondent has filed a Motion for Summary Judgment (Doc. No. 4), and Petitioner has responded (Doc. No. 7.)

## II. LEGAL STANDARD

The habeas statute at 28 U.S.C. § 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).[1] "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Absent violation of a Federal constitutional right, a habeas petitioner fails to state a cognizable claim for relief. Wilson v. Corcoran, 562 U.S. 1, 14 (2011) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law.").

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), limits the federal court's power to grant habeas relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on

---

[1] Even though Petitioner is challenging the execution of his sentence rather than its validity, § 2254 applies. In re Wright, 826 F.3d 774, 783 (4th Cir. 2016) ("[W]hen a prisoner being held pursuant to the judgment of a State court files a habeas petition claiming the execution of his sentence is in violation of the Constitution, laws, or treaties of the United States, the more specific § 2254 and all associated statutory requirements shall apply[.]" (internal quotation marks omitted)).

> an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). The "contrary to" and "unreasonable application" clauses contained in § 2254(d)(1) are to be given independent meaning—in other words, a petitioner may be entitled to habeas corpus relief if the state court adjudication was either contrary to or an unreasonable application of clearly established federal law.

AEDPA's standard is intentionally "difficult to meet." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quote and citation omitted). " '[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.' " Id. (quoting Howes v. Fields, 565 U.S. 499, 505 (2012)) (internal quote and citation omitted) (first alteration in the original).

A state court decision can be "contrary to" clearly established federal law in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (plurality opinion). "And an 'unreasonable application of' [clearly established Federal law] must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 572 U.S. at 419 (quoting Lockyer v. Andrade, 538 U.S. 63, 75–764 (2003)) (alteration added). "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woodall, 572 U.S. at 419-420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

## III. DISCUSSION[2]

### A. Due Process & Ex Post Facto Claims

In Ground One, Petitioner claims that he has a constitutionally-protected liberty interest in his good time credits[3] and that the North Carolina Department of Public Safety ("DPS"), formerly the North Carolina Department of Correction ("DOC"), "arbitrarily and retroactively" altered his good time credits without due process of law. (§ 2254 Pet. 5, Doc. No. 1.) In Ground Two, he claims the DPS violated the Ex Post Facto Clause by retroactively altering the sentencing provisions it had created. (§ 2254 Pet. 7.) According to Petitioner, the State's sentencing provisions in effect at the time of his offense mandated that good time credits be applied against the total length of an inmate's sentence for "all purposes," including calculation of an unconditional release date. He asserts that on or about July 16, 2017, he had accumulated enough credits to fully satisfy his sentence, but when he sought unconditional release, DPS refused to apply his credits to his unconditional release date and release him.[4] (§ 2254 Pet. 5.)

Petitioner raised his due process and ex post facto claims in his September 22, 2018 "Motion for Summary Judgment Response to Application for Writ of Habeas Corpus et seq., Response in Opposition to Affirmation in Opposition to Deny Application for Writ of Habeas Corpus."[5] (Resp't's Ex. 4, Doc. No. 5-5.) The state court denied the claims on the merits. (Jan.

---

[2] Respondent contends the Petition is barred by the statute of limitations. However, "inasmuch as the statute of limitations question is arguably more difficult than the merits issues," the Court will assume without deciding that Petitioner's claims are not time-barred and proceed with an analysis of their merits. See Waddell v. Dep't of Correction, 680 F.3d 384, 394 (4th Cir. 2012).

[3] For simplicity's sake, the Court refers to good time, gain time, and merit time credits collectively as "good time credits," although they are earned for different reasons.

[4] Although the name of the corrections department has changed, the Court hereinafter uses DOC because most of the cases it relies on were decided before the name was changed to the Department of Public Safety.

[5] It is not clear what this pleading purported to be, but the state court denied it on the merits, and Respondent does not assert a procedural default defense, so the Court assumes it was a properly-filed pleading in the state court.

22, 2018 Order Deny. Mot. for Summ. J., Resp't's Ex. 5 at 46, Doc. No. 5-6.)

Petitioner is one of a limited group of prisoners, referred to herein as the Bowden-class inmates, who committed offenses between April 8, 1974, and June 30, 1978, and received sentences of life in prison, pursuant to North Carolina General Statute § 14–2. See, e.g., Lovette v. N.C. Dep't of Corr., 737 S.E.2d 737 (N.C. 2013) (per curiam). The version of § 14–2 in effect during that time stated that "[a] sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the State's prison." N.C. Gen. Stat. § 14–2 (Supp. 1974). For decades, however, North Carolina prison officials "interpreted a life sentence imposed under that statute to be an indeterminate sentence. . . .[,]" Jones v. Keller, 698 S.E.2d 49, 53 (N.C. 2010), and the 80-year figure to apply only to the assessment of parole eligibility, see State v. Bowden, 668 S.E.2d 107 (N.C. Ct. App. 2008). In Bowden, the NCCOA held that § 14–2's 80-year rule requires a life sentence to be treated as an 80-year sentence for all purposes. See id. at 109-110. The Bowden decision produced questions for North Carolina prison officials concerning whether good-time credits applied to reduce such "80–year life sentences."[6]

On November 10, 2009, the DOC directed that any prisoner sentenced to life under the 80-year rule would be given an unconditional release date that was eighty years from his date of conviction, without taking into account any good time credits. See Waddell v. Dep't of Correction, 680 F.3d 384, 388 (4th Cir. 2012). In line with this directive, Petitioner was given a release date of November 3, 2060. See N.C. Dep't of Public Safety Offender Public Info., https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (Search: Brown, Marshall, OPUS # 0050673; last viewed 9/20/2019).

---

[6] At the time of the Jones decision, "DOC's regulations provide for good time, gain time, and merit time to be credited against an inmate's sentence." Jones, 689 S.E.2d at 54 (citing Div. of Prisons, N.C. Dep't of Corr., Policy and Procedure, ch. B, §§ . 0109–.0116 (Oct. 5, 2007) (hereinafter "DOC Manual"); 5 NCAC 2B.0101–.0103 (Feb. 1976, Mar. 1980, Sept. 1983)). This Court refers to these credits in the aggregate as "sentencing credits."

5

Following the Secretary's decision, several of the Bowden-class inmates initiated state post-conviction proceedings contesting their newly calculated release dates, contending that their good time credits had not been properly applied. Among these was Alford Jones, who argued that his good time credits should have been applied to calculate his unconditional release date, thus substantially reducing his eighty-year rule sentence. See Jones, 698 S.E.2d at 56. The NCSC, however, upheld the DOC's decision not to apply good time credits to calculate the unconditional release dates of the Bowden-class inmates. See id.

The Jones decision relied on North Carolina General Statute § 148–11, which delegates the administration of prison sentences to the DOC, and renders the rules and regulations regarding good time credits " 'strictly administrative and not judicial.' " Id. at 53–54 (quoting State v. Garris, 144 S.E.2d 901, 902 (N.C. 1965)). Relying on the separation-of-powers doctrine, the Jones court recognized that it "has long held that when an agency of another branch of government is authorized to exercise regulatory power over the administration of prison sentences, we will defer to that authority to the extent the delegation is constitutional." Jones, 698 S.E.2d at 53. The court further observed that "as a general rule, the judiciary will not review the DOC's grant, forfeiture, or application of credits against a prisoner's sentence." Id. at 54. "The Jones court thus ruled that the DOC's decision on how to apply good time credits was within its statutory authority, concluding that, 'implicit in DOC's power to allow time for good behavior under section 148–13 is authority to determine the purposes for which that time is allowed.'" Waddell, 680 F.3d at 389 (quoting Jones, 698 S.E.2d at 55).

Turning to Petitioner's due process and ex post facto claims, federal courts review habeas "claims for violations of federal law only, inasmuch as 'federal habeas corpus relief does not lie for errors of state law.'" Waddell, 680 F.3d at 394 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Thus, this Court is "not entitled to decide whether the DOC's actions fall within the

statutory authority delegated to it under North Carolina law, but only whether the DOC's refusal to apply [Petitioner]'s good time credits to reduce his life sentence violated the Due Process Clause or the Ex Post Facto Clause of the Constitution." Waddell, 680 F.3d at 394. Under the holdings in Waddell, it did not.

Bowden-class defendant Waddell filed a federal habeas petition claiming that the DOC's refusal to apply his good time credits toward his unconditional release date violated his rights under the Fourteenth Amendment Due Process Clause, and the Ex Post Facto Clause. See id. at 390. As to the due process challenge, the Fourth Circuit wrote:

> Supreme Court precedent speaks directly to the due process issue as it relates to good time credits. The Court held in 1974 that a prisoner's interest in good time credits has substance, and that due process requires that such a right not be "arbitrarily abrogated." See Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, Wolff recognized that after a prisoner has earned good time credits under a state statute that awards mandatory sentence reductions for good behavior, he possesses a liberty interest in a reduced sentence, which cannot be revoked in the absence of minimum procedural guarantees. Id. at 556, 94 S.Ct. 2963. In Waddell's case, however, there was nothing arbitrary about the DOC's failure to apply good time credits to reduce his life sentence, and nothing that was rightfully his was abrogated. As the Jones decision explains, the DOC has never used good time credits for the purpose of reducing a life sentence. See Jones, 698 S.E.2d at 56–57. On this record, the DOC administered good time credits for the purpose of calculating parole eligibility dates, determining custody grades, and, in the event a life sentence was commuted by the Governor to a term of years, to reduce the sentence accordingly. Because good time credits were never used for the purpose of achieving the relief Waddell seeks, his right to use such credits in that manner could not be abrogated. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 11–12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (observing "difference between losing what one has and not getting what one wants").
>
> Put simply, the DOC's practice of applying earned good time credits for certain identified purposes, but not for the purpose sought by Waddell, does not give rise to a liberty interest protected by the Due Process Clause. See Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) (emphasizing that common practice of Board of Prisons was insufficient to create liberty interest where statute neither required nor prohibited such practice). In other words, as explained by North Carolina's highest court in the Jones decision, "[b]ecause [Waddell] has received the awards to which he is entitled for the purposes for which he is entitled, he has not been denied credits in which he has a

7

> constitutionally protected liberty interest." Jones, 698 S.E.2d at 56. As a result, Waddell's liberty interest in good time credits has been sufficiently recognized. His due process claim therefore fails.

Id. at 394-395. As for the claim that the DOC violated the Ex Post Facto Clause, the Fourth Circuit stated:

> [T]he Jones decision determined that there had been no ex post facto violation because no regulatory or legislative enactment had altered Jones's award of good time credits. The ex post facto clause bars a retroactive enactment that increases the punishment for a crime after it has been committed. See Garner v. Jones, 529 U.S. 244, 249, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). It is settled that "[t]he prohibition against ex post facto laws, which applies only to penal statutes which disadvantage the offender affected by them, assures that innocent conduct is not made criminal after the fact and that greater punishment is not imposed after the fact." Jones v. Murray, 962 F.2d 302, 309 (4th Cir.1992) (internal quotation marks omitted).
>
> The DOC's failure to utilize Waddell's good time credits to reduce his life sentence under the eighty-year rule did not result from any statutory or regulatory enactment after Waddell's first-degree murder offense. . . . The DOC's revision of the release dates of prisoners—such as Waddell—sentenced under the eighty-year rule was simply a correction of its records, and failed to impact on how good time credits were being applied. See Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000) (recognizing that "[a] change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws"); Stephens v. Thomas, 19 F.3d 498, 500–01 (10th Cir.1994) (finding no ex post facto violation when department of corrections fixed erroneous internal practices relating to good time credits, even though change disadvantaged certain prisoners).
>
> Waddell's ex post facto claim has no merit because, as the Jones decision explained, no legislative or regulatory enactment ever altered Waddell's award of good time credits. Put simply, Waddell's sentence has been—and remains—life in prison. His current projected release date was calculated pursuant to a short-lived enactment that deemed a "life sentence" to be eighty years. Such a release date calculation is the product of a legislative enactment and does not guarantee Waddell's release at any time before 2054. Although North Carolina law provided for the award of good time credits, it is for the DOC to determine how those credits are to be applied. See N.C. Gen. Stat. § 148–13.

Id. at 395-396. Accordingly, pursuant to Waddell, both Petitioner's due process and ex post facto claims fail.

Petitioner maintains, however, that he is situated differently from the defendants in Jones

and Waddell because at the time of his offenses, the DOC, through its authority supplied by N.C. Gen. Stat. § 148-13, had adopted 5 NCAC 2B.0101–.0103 (Feb. 1976) ("5 NCAC-2B"). According to Petitioner, when 5 NCAC 2B was adopted in 1976, it included a provision mandating application of sentencing credits to reduce the terms of defendants sentenced to life in prison.[7] He argues the holdings in Jones and Waddell do not apply to him because the defendants in those cases committed their offenses before 5 NCAC 2B was promulgated.

The Jones Court analyzed the statutes and regulations at issue from the perspective of when Jones was *sentenced*, not when he committed his offenses. See Jones, 698 S.E.2d at 56 (citing 5 NCAC 2B.0110(6) (Apr. 1995); id. 2B.0102 (Sept. 1983); DOC Manual ch. B, § .0110(a), (f) (Oct. 5, 2007)). Jones was convicted on March 19, 1975, for the January 6, 1975 murder of William B. Turner, Sr., and sentenced to death. See Jones, 698 S.E.2d at 52. The NCSC vacated his death sentence on June 17, 1976, pursuant to the United States Supreme Court's opinion in Woodson v. North Carolina, 428 U.S. 280 (1976). See id. Upon remand to the superior court, Jones was sentenced to a term of life imprisonment on September 27, 1976, see id., *after* 5 NCAC 2B was issued.

According to the NCSC, as of November 30, 2009, Jones "had accrued good time totaling 14,041 days, gain time totaling 2,146 days, and merit time totaling 1,745 days," which, had it been applied, would have entitled him to unconditional release from his "80-year life sentence." Jones, 698 S.E.2d at 52. The court noted that while DOC regulations had changed several times between Jones's incarceration and the filing of his habeas petition, those regulations provided for good time, gain time, and merit time to be credited against an inmate's sentence.

---

[7] Although Petitioner has typed out a portion of what he asserts is a section of 5 NCAC 2 (1976), see § 2254 Supporting Mem. at 14 (Doc. No. 1-1), the section he has provided does not state how, or to what, sentencing credits are to be applied. Petitioner has not provided, and this Court was unable to find, a copy of the version of 5 NCAC 2 adopted in 1976.

9

See id. at 54 (citing Div. of Prisons, N.C. Dep't of Corr., Policy and Procedure, ch. B, §§ . 0109–.0116 (Oct. 5, 2007); 5 NCAC 2B.0101–.0103 (*Feb. 1976*, Mar. 1980, Sept. 1983)) (emphasis added). The NCSC's citation to the 1976, 1980, and 1983 versions of 5 NCAC 2B.0101–.0103 indicates that all three versions provided for good time, gain time, and merit time to be credited against an inmate's sentence. The Jones Court found, however, that no regulation explicitly provided that credits were to be used to calculate an unconditional release date. Jones, 698 S.E.2d at 57.[8] Moreover, the court concluded that implicit in DOC's power to allow time for good behavior under state law is the authority to determine the purposes for which that time is allowed. Jones, 698 S.E.2d at 55 (citing § 148-13 (1974)). And, the Jones Court found, "[t]he Department of Correction has never used good time, gain time, or merit time credits in the calculation of unconditional release dates for inmates who received sentences of life imprisonment." Id. at 54 (internal citation omitted). Petitioner has not demonstrated that he is differently situated from the defendants in Jones and Waddell.

Petitioner's due process and ex post facto claims are, therefore, challenges to the State's interpretations of its own statutes and regulations. See Waddell, 680 F.3d at 396. "Put succinctly,"

> the DOC's obligation to keep track of good time credits for purposes of parole eligibility, custody grade, and commutation, and its decision not to utilize them to reduce the release dates of prisoners sentenced under the eighty-year rule, was recognized in the Jones decision—by the state's highest court—as a reasonable application of the DOC's authority to administer sentences.

Id. at 396. Under AEDPA, this Court is only entitled to assess whether the due process and ex post facto rulings of the Jones decision were contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. That inquiry

---

[8] In Jones's case, the DOC used good time credits for the purposes of allowing him to move to the least restrictive custody grade and to calculate his parole eligibility date. See Jones, 698 S.E.2d at 54 (2010).

must be answered in the negative in light of the Fourth Circuit's holdings in Waddell.

**B. Impairment of Contract**

Petitioner claims he entered a plea bargain with the State that included the benefit of having his sentence reduced automatically for good conduct, working a job, and participating in certain programs, and that the State has retroactively altered and limited the effects of Petitioner's good time credits in a manner not bargained for. (§ 2254 Pet. 8.) The state court denied this claim on the merits.

As an initial matter, Petitioner has produced no evidence that the plea he negoiated with the State included a provision that his sentence would be reduced automatically for good conduct, working a job, or participating in certain programs. Petitioner likewise has produced no evidence that his guilty plea was not knowing, intelligent, and volutary. Notably, Petitioner's judgment and commitment form states that he was to be imprisoned "for the remainder of his natural life." Nov. 16, 1977 J. & Commit. Form (Doc. No. 5-2).

The fact that Petitioner did not anticipate the DOC's interpretation of § 14-2, "does not impugn the truth or reliability of his plea." Brady v. United States, 397 U.S. 742, 757 (1970). In Brady v. United States, the Supreme Court found "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." Id.

As the Fourth Circuit has observed, "[c]ontracts in general are a bet on the future. Plea bargains are no different: a classic guilty plea permits a defendant to gain a present benefit in return for the risk that he may have to forego future favorable legal developments." Dingle v. Stevenson, 840 F.3d 171, 175–76 (4th Cir. 2016). Petitioner has failed to demonstrate that the

11

state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law. This claim is denied.

**C. Equal Protection Clause**

Petitioner claims the DOC has always applied good time credits toward the unconditional release date of any prisoner serving a determinate sentence. In his case, however, the DOC has refused to apply his good time credits toward his unconditional release date. Petitioner claims that in so doing, the DOC has violated his rights under the Equal Protection Clause. (§ 2254 Pet. 10.)

Petitioner's argument is that life sentences imposed under the 1974 version of section 14–2 are indistinguishable from ordinary term-of-years sentences and that DOC has, therefore, violated equal protection by treating him differently from term-of-years inmates. The state court denied this claim on the merits.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen. of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). The government's treatment of dissimilarly situated persons in a dissimilar manner does not violate the Equal Protection Clause. See Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994).

To establish a claim under the Equal Protection Clause, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Secretary, Dep't of Corr., 467 F.3d 1311,

1318-19 (11th Cir. 2006). Evidence that merely indicates disparity of treatment, or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. See McCleskey v. Kemp, 481 U.S. 279 (1987). Once the prisoner has made the first two showings, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). The similarly situated inquiry focuses on whether Petitioner is similarly situated to another group for purposes of challenging the DOC's action.

Bowden-class prisoners like Petitioner, who were sentenced to life in prison for second-degree murder, are not similarly situated to other inmates serving determinate sentences. See 731 S.E.2d 206, 216 (N.C. Ct. App. 2012) (Ervin, J. dissenting), writ allowed, S.E.2d 177 (N.C. 2012), and rev'd, 737 S.E.2d 737 (N.C. 2013).[9] At the time Petitioner's life sentence was imposed, individuals convicted of second degree murder were subject to either an explicitly determinate sentence or a sentence of life imprisonment imposed pursuant to former N.C. Gen. Stat. § 14–2. See Lovette, 731 S.E.2d at 216. The North Carolina court reasoned that because the inmates could have received an explicitly determinate sentence at trial but were sentenced to life imprisonment, there was a rational basis for believing that they represented a greater threat to society than those sentenced to explicitly determinate sentences for second-degree murder. See id. (citing Jones, 698 S.E.2d at 57, 58). Accordingly, the court held that the DOC may refuse to utilize good-time credits for the purpose of calculating an unconditional release for Bowden-class inmates, like Petitioner, who were convicted of second-degree murder. See id.

---

[9] In a 2-1 decision, the majority in Lovette, held that Bowden-class inmates convicted of lesser crimes than first-degree murder and sentenced under N.C. Gen. Stat. § 14–2, were entitled to unconditional release after application of good-time credits to their life sentences. 731 S.E.2d 206 (N.C. Ct. App. 2012). The dissenting judge argued that the inmates were not entitled to release under the analysis employed in Jones decision. See id. at 209. The NCSC reversed for the reasons stated in the dissenting opinion. Lovette v. N. Carolina Dep't of Correction, 737 S.E.2d 737 (2013).

In Petitioner's case, the state court reasonably could have concluded that the DOC did not violate Petitioner's equal protection rights based upon the reasoning in <u>Jones</u> and <u>Lovette</u>. Petitioner has not demonstrated that fair-minded jurists would disagree that the holdings in <u>Jones</u> and <u>Lovette</u> are inconsistent prior holdings of the U.S. Supreme Court. See <u>Richter</u>, 562 U.S. at 102.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**;

2. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: October 1, 2019

Frank D. Whitney
Chief United States District Judge