IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
*****************************************************

MARSHALL LEE BROWN, JR.,  )
                Petitioner,  )
                              )
                              )
v.  )  Case No. 5:18-cv-0092FDW
                              )  Chief U.S. Judge Frank D. Whitney
                              )
ERIC HOOKS,  )
                              )
                Respondent.  )
                              )

## MEMORANDUM AND AFFIDAVIT IN SUPPORT
## OF PETITIONER'S RULE 59(e) MOTION TO ALTER
## OR AMEND THE JUDGMENT AND RULE(60)(b)

Petitioner, Marshall L. Brown, Jr., respectfully submits this memorandum and affidavit in support of his request that this Court reconsider, alter and amend its decision of October 1, 2019, granting Respondent's Motion for Summary Judgment (Doc. No. 4), denying the Petition for Writ of Habeas Corpus, hereinafter Petition (Doc. No. 1), and declining to issue a certificate of appealability because petitioner has not made a substantial showing of a denial of a constitutional right as required by Rule 11(a) of the Rules Governing Section 2254 Cases, hereafter Rule 11(a). 28 U.S.C. §2253(c) (2), hereafter §2253(c) (2).

**I.    STANDARD FOR RELIEF UNDER RULES 59(e).**

Rule 59(e) motions will be granted in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or

(3) to correct a clear error of law or prevent manifest injustice." *Ingle ex rel Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006). Rule 60(b) states "[t]he court may, on motion and just terms, relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect.

## II. DISCUSSION

Petitioner contends that his case satisfies each of the circumstances required in Rule 59(e) and, in support of said contention, respectfully submits to this Court the following:

### A. Petitioner argues that his motion should be granted pursuant to Rule 59(e) (1) to accommodate an intervening change in controlling law and Rule 60(b).

In its order, the court stated that petitioner did not make a substantial showing of a violation of a constitutional right as required by §2253(c) (2), pursuant to Rule 11(a). Petitioner disagrees.

Petitioner contends that this Court's finding that petitioner failed to make said showing is erroneous. The court admits its failure to obtain a copy[1] of the mandatory regulation, 5 N.C. Admin. Code 2B §§ .0100-.0102 (1976), hereafter 5 NCAC 2B (1976), enacted by the North

---

[1] Petitioner strongly believes that this Court's inability to find said statute(s) and regulations is not by happenstance but the result of a concerted effort to spoliate them as evidence. Petitioner notes here that he has contacted legislative libraries, law libraries, state universities, and other state institutions that routinely possess such statutes and administrative regulations, and all seem to mysteriously be unable to locate this particular volume of the administrative codes. Petitioner understands how he, as lowly prison inmate, could be marginalized this way but is totally disillusioned to learn that a United States District Court could be snubbed also. In *Romaine v. Rawson*, 140 F. Supp.2d 204, 210 (N.D.N.Y 2001) the court gave weight to the fact that prison officials mislaid all the inmates' statements supporting plaintiff's allegations but not the ones that didn't support them; see also *Pelletier v. Magnusson*, 195 F. Supp.2d 214, 233-37 (D. Me. 2002) spoliation of evidence in the form of missing records barred summary judgment against the plaintiff; question of missing evidence inference left to trial.

Carolina legislature, under N.C. Gen. Stat. §148-13 (Cum. Supp. 1975) (amended 1979), hereafter §148-13 (1975), and promulgated by the N.C. Dept. of Corrections, hereafter DOC, on June 30, 1977. *Kring v. Missouri*, 107 U.S. 221, 228 (1883), hereafter *Kring*, states that it is the law in effect at the time of petitioner's offense that governs his punishment. Vol. 5 of NCAC 2B (1976), supra, is the regulation that governs this petitioner's punishment and the DOC has acted 'contrary to' it, by unreasonably applying petitioner's sentence reduction credits in a manner that violates his right to due process. Therefore, it was, and is, of paramount importance that this court has a full copy of it, or a reliable substitute, to determine whether a genuine issue of a material fact exists. (See Fed. R. Civ. Pro. 56(a), hereafter Rule 56). Without it, this court could not see how the DOC, by limiting the application of sentence reduction credits, in effect, acts conversely as an intervening change in controlling law that this court should not accommodate. (See. id. 5 NCAC 2B (1976); Rule 59(e), supra, respectively). To allow this unconstitutional activity promotes a manifest injustice to petitioner.

Throughout all of his pleadings, in this and prior courts, petitioner has consistently requested that judicial notice of 5 NCAC 2B (1976) be taken; Rule 201(b) of the Fed. R. Evid., hereafter Rule 201, allows it. From petitioner's vantage point, for this court to now deny him because he failed to produce it and grant Respondent's Motion for Summary Judgment, is a clear error that promotes manifest injustice, especially in light of this court's own 'inability'[2] to obtain a copy.

At the filing of his Petition, petitioner had been incarcerated in 'close-custody'[3] for 20 years. This handicap, coupled with the lack of access to a law library, has forced him to rely

---

[2] Referring to fn. 1, supra.

[3] Close-custody is a security classification that oftentimes consist of prisoners being 'locked down' i.e. confined to their cells for 23 hours of a 24 hour day.

solely on the courts' power to apply the law, as allowed, to meet any evidentiary burden of proof that petitioner may have. This reliance was in full effect, when petitioner responded to Respondent's Response and Motion for Summary Judgment. (See I., ¶ 1. of Petitioner's Response to Respondent's Motion for Summary Judgment, hereafter Response). There, petitioner informed this court that, despite his due diligence[4] to obtain a copy of 5 NCAC 2B (1976), he had always been unsuccessful, save the portion of which he provided this court. (See id. Response, supra).

Moreover, id. Rule 56(c) (1) (A) and (B), (d) (2) (3), and (e), supra, allows a party to cite materials, etc. to support their assertions. Again, petitioner contends that, by referring this court to 5 NCAC 2B (1976) and the cases that discuss it, he satisfied this rule.

To err is human, to correct is divine. Purportedly, the architects of the civil rules contemplated such errors, when they crafted id. Rule 59(e) (cited more fully, supra) and Rule 56(d) (2), (3), also supra, and Rule 60(a), (b) and (d). Rule 60(b) specifically states that "[t]he court may, on motion and just terms, relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect. Petitioner now asks this court to utilize these rules collectively by: (1) allowing petitioner's Rule 59(e) motion on the grounds argued, supra and infra, (2) issue an order for a short discovery period to determine if Respondents might have access to the requisite document(s) or (3) take judicial notice of, and accept as evidence, pursuant to Rule 201(c) of the Fed. R. Evid., the meticulous, well-written Memorandum Opinion and Order, hereafter Memorandum, of the Hon. Ripley E. Rand, presiding judge in *Faye B. Brown v. Keller*, 364 NC 319, 320 (2010), and habeas cite 09CVS23746 Wake County (related to Martin County File No. 75CRS3812), hereafter *Brown*.

---

[4] Petitioner: (1) wrote numerous letters to various state agencies, libraries, lawyers, etc., (2) made phone calls, and (3) sent emissaries, etc., all in an effort to secure a copy of the needed laws, etc. to litigate this case.

Rule 201(c), id., supra, states that "[t]he court must take judicial notice if a party requests it and the court is supplied with the necessary information." Again, petitioner supplied this information by: (1) consistently citing id. 5 NCAC 2B (1976), supra, in his pleadings, etc., (2) referring this court, and preceding courts, to the cases that cite it (including *Brown*), supra, and (3) providing the portion of 5 NCAC 2B (1976) that was available to him.

Acceptance of Judge Rand's Memorandum, would prevent further delay of said manifest injustice and cure the problem of obtaining a copy of the 'elusive' 5 NCAC 2B (1976). Moreover, the Memorandum is on point, as it addresses the central issues in petitioner's case i.e. the very existence of 5 NCAC 2B (1976) and its relevant language regarding the how, and to what, the mandatory sentencing credits granted by it are to be applied to petitioner's 80 year term.[5] (See attached, Petitioner's Exhibit No. 1, "MEMORANDUM . . .").[6]

Moreover, still, *Brown*, supra, and its companion case *Jones v. Keller*, 364 N.C. 249 (2010), hereafter *Jones*, like *Waddell v. Dep't of Corr.*, 680 F. 3d 384 (4th Cir. 2012), hereafter *Waddell*, was a member of the so-called *Bowden*-class of cases, to which petitioner is continuously being lassoed. Its facts were adjudicated from the state trial court, to the N.C. Court of Appeals, and finally to North Carolina's Supreme Court and, as such, is not subject to reasonable dispute because they: (1) are generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned e.g. state statutes, Judge Rand's Memorandum, N.C. Reporters, or even

---

[5] N.C. Gen. Stat. §14-2's plain language states that a life sentence "[s]hall be considered as a term of 80 years," and 5 NCAC 2B clearly considered this when it stated that the application of good time credits towards the total sentence length included [a]ll inmate[s], including . . . those with life terms. Again, see 5 NCAC 2B (1976). Once granted, pursuant to *Wolff v. McDonnell*, 418 U.S. 539 (1974), discussed more fully infra, these credits cannot be arbitrarily abrogated.

[6] A more thorough discussion of Judge Rand's analysis and opinion regarding 5 NCAC 2B (1976) id., supra, and its directives on the application of reduction credits, can be found in section III, Rule 59(e) (3), infra.

Judge Rand himself. Therefore, again, to avoid delay and the continuation of manifest injustice, petitioner requests its acceptance, pursuant to Rule 201(c) and (d), supra.

Under this circumstance, petitioner respectfully asks this Court to grant his motion to alter or amend its judgment and deny Respondent's Motion for Summary Judgment, grant petitioner's Petition or issue a certificate of appealabilty.

### B. Petitioner argues that his motion should be granted pursuant to Rule 59(e) (2) to allow this Court to account for new evidence not available at trial.

From a literal standpoint, id. 5 NCAC 2B (1976), supra, has existed since February 1976, but from a practical one, given Petitioner's (and now this Court's) inability to locate a copy of it, its existence seems abstract. Because of this mysterious 'unavailability,'[7] petitioner argues that 5 NCAC 2B (1976), supra, was unavailable for trial and, if ever found, would constitute newly discovered evidence that did not exist at the time of summary judgment and, therefore, meets the '[u]navailability of facts clause of Rule 56 and the remedies afforded by it.

Under this circumstance, petitioner respectfully asks this Court to grant his motion to alter or amend its judgment and deny Respondent's Motion for Summary Judgment, grant petitioner's Petition or issue a certificate of appealabilty.

### C. Petitioner argues that his motion should be granted pursuant to Rule 59(e) (3) to correct a clear error of law or prevent manifest injustice.

On the issues of clear error and manifest injustice, Petitioner reiterates the argument(s) of A., supra, and, now, argues further.

This court admits that the Fourth Circuit has held that, as to the due process challenge, after a prisoner has earned good time credits under a state statute that awards mandatory sentence

---

[7] See fn. 2, supra.

reduction credits for good behavior, he possesses a liberty interest in a reduced sentence, which cannot be revoked in the absence of minimum procedural guarantees. (See *Wolff*, id. at 556). Petitioner is such a prisoner. Section 148-13 (1975), id., supra, was the statute that gave the DOC the authority to award such mandatory sentence reduction credits for good behavior and they did so via their promulgation of 5 NCAC 2B (1976,), id., supra. Petitioner reminds this court that in his Response to Respondent's Response and Motion for Summary Judgment, he requested of this court that all claims, arguments, etc.—including his petition for habeas corpus and its supporting memorandum—be incorporated for reference and asked this court to take judicial notice of the id. Judge Rand's Memorandum, both mentioned in A., supra.

Said memorandum, in relevant part explains that the purpose of 5 NCAC 2B (1976) was to:

> [E]stablish a method of computing Good Time for acceptable behavior and earned Gained Time for behavior which would not normally be required of an inmate . . . and included ALL inmate[s], including . . . those with life terms. It further stated that the credits SHALL be allowed a maximum of 107 days Good Time . . . for each year served . . . It stated, further still, that Regular Good Time was to constitute 29.411% of total sentence length . . .[8]

and was all aimed at determining a prisoner's unconditional discharge or parole date, respectively. (Again see Petitioner's exhibit 1. 'Memorandum . . .', p .4, clause 7., §.0101 PURPOSE). This is

---

[8] This percentage was later increased by additional promulgations to one day of credit given for each day served with good behavior. See Judge Rand's continued delineation of 5 NCAC 2B (1976) and how it comports with the continued sentencing scheme decided in *Lynce v. Mathis* 519 U.S. 433 (1997).

precisely the type of state-created right that the U.S. Supreme Court has held protected by *Wolff*,[9][10] supra, yet the DOC has refused to comply with this clearly established law by 'unreasonably applying' earned sentence reduction credits in a manner that is' contrary to' said law.

Moreover, id. *Kring*, supra, citing Article I, §§9-10 of the Constitution of the United States, states that any law passed after the commission of an offense, which in relation to that offense or its consequences, alters the situation of a party to his disadvantage is an ex post facto law. In petitioner's case, though no express law was passed that contravenes 5 NCAC 2B (1976), the N.C. Supreme Court judicially constructed the interpretation of it in a manner that allowed the DOC to run afoul of *Wolff*. Such judicial construction is prohibited. (See *Buie v. City of Columbia*, 378 U.S. 347 (1964)). It is an arbitrary due process violation with an ex post facto effect and has kept this petitioner incarcerated well beyond the expiration of his sentence.

Were this court to sanction these substantial due process violations shown here, it would be erroneous and manifest injustice.

Finally, in incorporating his arguments from A., supra, petitioner contends that circumstance C. also presents the precise sort of adjudicative facts contemplated by Rule 201(b), supra, and, again, because they are not subject to reasonable dispute, are generally known within

---

[9] It should not escape this Court's attention that, in 1974, the United States Supreme Court also ruled in *Wolff*, that "the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison . . . [b]ut the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment liberty." Id.
  In 1975, the North Carolina legislature enacted §148-13 and in 1976 enacted 5 NCAC 2B (1976 which was promulgated by the DOC in 1977. Now, 40 plus years later, the DOC, without any legislative authority to point to, has decided to eviscerate a sentencing scheme that—from a constitutional standpoint—still stands. See id. *Kring*, supra; again, see *Lynce*, supra.

[10] As this Court can see, the DOC's failure to apply petitioner's good time credits to reduce his 80 year term is not merely [a] change in an administrative policy that was in effect at the time of his underlying offense . . . nor is it [a] mere fixing of internal practices as contemplated in *Warren v. Baskerville*, 233 F.3d 204, 207 (4th Cir. 2000) or *Stephens v. Thomas*, 19 F.3d 498, 500-01 (10th Cir. 1994), respectively. Instead, it is an outright retroactive and 'arbitrary abrogation,' the likes of which *Wolff* forbids.

the trial court's jurisdiction and because they come from a source whose accuracy cannot reasonably be questioned and can be readily determined, petitioner request that this Court take judicial notice of them pursuant to id. Rules 201(b) (1), (2) and (c) (2), supra, Rules 803(A) (8) (1), (2), and (3), and 803(B) of the Fed. R. Evid., supra, and id. Rule 56(3), supra, respectively. Additionally, petitioner renews his request that this Court take judicial notice, to the extent that it has not, all previous pleadings, filings, etc. and incorporate them for reference. In the event that the Court is not inclined to take judicial notice per petitioner's request, petitioner would like the opportunity to be heard pursuant to id. Rule 201(d) and Rule 201(e), supra.

Under this circumstance, petitioner respectfully asks this Court to grant his motion to alter or amend its judgment and deny Respondent's Motion for Summary Judgment, grant petitioner's Petition or issue a certificate of appealabilty.

## CONCLUSION

This Court should grant petitioner's Rule 59(e) motion. For said motion to carry, *Ingles*, id., supra, requires that one of the three enumerated circumstances expressed, supra, be met. Petitioner argues that, whether considered singularly or collectively, he has met the required burden and believes that, had this Court been afforded the opportunity to consider his evidence in its entirety, i.e. a full copy of id. 5 NCAC 2B (1976), supra, prior to rendering its decision, the judgment would have been different. Had it not, at worst, petitioner would have demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong and, pursuant to *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003), a certificate of appealability would be warranted and *Slack v. McDaniel*, 529 U.S. 474, 484 (2000), (holding that when relief is denied on procedural grounds a petitioner must establish both that the

correctness of the dispositive procedural ruling is debatable and his petition states a debatably valid claim of a denial of a constitutional right. Petitioner has shown both. Consequently, the Respondent's Motion for Summary Judgment should fail and petitioner's Petition should be granted because the facts, the law, and Equity and fairness demand it. Emphasis added.

Therefore, this Court should grant petitioner's motion to reconsider pursuant to Rules 59(e) and 60(b), respectively.

DATED: October 16, 2019

Respectfully submitted

*Marshall L. Brown, Jr.*
Marshall Lee Brown, Jr.
Opus# 0050673
Scotland Correctional Institution
22383 McGirts Road
Laurinburg, NC 28352
PETITIONER PRO SE